UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Sonny Vu

    v.                            Civil No. 19-cv-00680-LM
                                    Opinion No. 2019 DNH 181
RSI Racing Solutions, Inc.


**O R D E R**

Plaintiff Sonny Vu sues defendant RSI Racing Solutions, Inc. ("RSI") for claims arising out of the parties' agreements regarding upgrades to a Dodge Viper automobile. RSI moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(2), claiming that the court lacks personal jurisdiction over it. Doc. no. 14.[1] Alternatively, RSI requests that the court transfer this case to the United States District Court for either the Eastern or Northern District of Texas pursuant to 28 U.S.C. § 1404(a). Doc. no. 15. Vu objects to both motions. Doc. nos. 17 & 19. On October 11, 2019, the court heard oral argument on these motions. Because Vu has failed to make a prima facie showing that this court has personal jurisdiction over RSI, the court cannot exercise jurisdiction over this suit. Instead of dismissing this action, however, the court will

---

[1] RSI also moves to dismiss for <u>forum</u> <u>non</u> <u>conveniens</u>.

transfer the case to the United States District Court for the Eastern District of Texas.

## STANDARD OF REVIEW

When a defendant contests personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of persuading the court that jurisdiction exists.  See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).  Where, as here, the court considers a Rule 12(b)(2) motion without holding an evidentiary hearing, the court applies the prima facie standard.  See Sawtelle v. Farrell, 70 F.3d 1381, 1386 n.1 (1st Cir. 1995).  To make a prima facie showing of jurisdiction, a plaintiff cannot rest on the pleadings, but must adduce evidence of specific facts supporting jurisdiction.  See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995).

The court "draws the facts from the pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by the plaintiff as true and viewing disputed facts in the light most favorable to plaintiff."  Sawtelle, 70 F.3d at 1385.  The court may also consider the facts posited by defendant, to the extent they are uncontradicted.  See Mass. Sch. of Law, 142 F.3d at 34.  But the court need not "credit conclusory allegations or draw farfetched

inferences." Id. (internal quotation marks omitted). In short, the court does not sit as a fact-finder; it "ascertains only whether the facts duly proffered, fully credited, support the exercise of personal jurisdiction." Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 84 (1st Cir. 1997).

## BACKGROUND

During all relevant times, Vu lived part-time in New Hampshire and part-time in Vietnam. He paid taxes as a resident of Salem, New Hampshire and held a New Hampshire driver's license.

Vu wanted to buy a used Dodge Viper automobile and sought the assistance of an experienced Viper mechanic or dealer to help him. In November 2015, Vu found RSI's website, www.racingsolutions.com. RSI is a corporation incorporated in Texas, with its principal and sole place of business in Plano, Texas. RSI does not have a physical office in New Hampshire or own any assets or property in this state. RSI's website advertises it as "the leader in Dodge Viper performance" and explains that it provides "retail or wholesale product sales, manufacturing, tuning and turn-key installations." Doc. nos. 11 at ¶ 8, 19-4 at 3. The website also advertises that "in less

than 4 weeks you could be driving your very own RSI Twin Turbo Gen 5 Viper!"  Doc. no. 19-4 at 2.

Vu contacted RSI via email about visiting RSI while Vu was in Texas.  Doc. no. 14-3 at 3.  RSI's owner responded to Vu's email and informed him of RSI's business hours.  After visiting RSI's shop in Texas, Vu entered into a written contract with RSI to purchase a used 2014 Dodge Viper located in West Virginia. Doc. no. 14-4.  Pursuant to the contract, an RSI representative traveled to West Virginia on Vu's behalf, inspected the 2014 Dodge Viper, purchased it, and transported it back to RSI's shop in Plano, Texas.  Vu paid RSI $82,500.00 for the cost of the vehicle, inspection, and transportation.

Vu and RSI subsequently made multiple oral agreements, via email and telephone, regarding modifications and upgrades to the Viper.  See, e.g., doc. no. 14-7 at 2-4.  RSI initiated these agreements by calling Vu or sending him emails to convince him to agree to and pay for additional upgrades.  See doc. no. 19-3. RSI mailed the sales orders for these upgrades to Vu's mailing address in New Hampshire.  Doc. no. 14-5.[2]

_____

[2] During their correspondence, however, Vu also provided RSI with two addresses in other states.  He instructed RSI to mail a package to an address in Burlingame, California, doc. no. 14-7 at 1, and he provided RSI with proof of insurance for the Viper that listed an address in Farmers Branch, Texas, doc. no. 14-6 at 1.  Vu asserts that both the California and Texas addresses were business addresses associated with his former employer.

Between November 2015 and August 2016, Vu sent RSI six additional payments totaling over $150,000.00 for upgrades to the Viper. Vu submitted all payments to RSI via wire transfer from a bank in New Hampshire. RSI initially promised that the modifications and upgrades would be completed during the first half of 2016. It then postponed the completion date until 2017.

By June 2019, when Vu filed this suit, the modifications remained incomplete and RSI retained possession of the Viper. Vu filed an amended complaint in August 2019. Doc. no. 11. The amended complaint alleges six claims: breach of contract; unjust enrichment; breach of implied covenant of good faith and fair dealing; violation of the New Hampshire Consumer Protection Act ("CPA"); intentional misrepresentation; and conversion. According to Vu, these claims are not premised on breach of the parties' written contract; rather, they arise from the parties' subsequent oral agreements for modifications and upgrades to the Viper.

## DISCUSSION

RSI moves to dismiss Vu's suit, arguing that this court lacks personal jurisdiction over RSI. Alternatively, RSI requests that this court transfer the action to a district court in Texas. The court addresses each motion in turn.

I.  Motion to Dismiss for Lack of Personal Jurisdiction

"Personal jurisdiction implicates the power of a court over a defendant." Foster-Miller, 46 F.3d at 143. "An exercise of jurisdiction must be authorized by state statute and must comply with the Constitution." Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005). New Hampshire's long-arm statute reaches as far as the Constitution allows. Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 287 (1st Cir. 1999). Therefore, the court's inquiry is whether the constitutional requirements of due process have been met. See id. "The Due Process Clause prohibits a court from imposing its will on persons whose actions do not place them in a position where they reasonably can foresee that they might be called to account in that jurisdiction." Id. Grounded in principles of fundamental fairness, the court's personal jurisdiction inquiry focuses on the quality and quantity of defendant's contacts with the forum state. See id. at 288.

Personal jurisdiction may be either specific or general. Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010). Vu argues only that this court has specific jurisdiction over RSI. The court limits its analysis accordingly.

Specific jurisdiction allows the court to hear a case if the action "relates sufficiently to, or arises from, a

significant subset of contacts between the defendant and the forum." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 35 (1st Cir. 2016) (internal quotation marks omitted).  To determine whether specific jurisdiction exists, courts consider three elements: relatedness, purposeful avaiance, and reasonableness. Phillips v. Prairie Eye Center, 530 F.3d 22, 27 (1st Cir. 2008).  Plaintiff must prove that each of these three requirements is met.  Id.  The court assumes for the sake of argument that Vu can satisfy the relatedness prong of the tripartite test and focuses its analysis on the purposeful avaiance inquiry.  See Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016) (skipping to purposeful avaiance inquiry and resting decision on plaintiff's failure to meet that requirement); Adams v. Adams, 601 F.3d 1, 6 (1st Cir. 2010) (assuming for the sake of argument that plaintiff could satisfy relatedness element and focusing on purposeful avaiance requirement).

The purposeful avaiance requirement relates to the defendant's "intentionality" with respect to the forum state. Adams, 601 F.3d at 6.  In considering this element, the court must ask "whether a defendant has deliberately targeted its behavior toward the society or economy of a particular forum such that the forum should have the power to subject the

defendant to judgment regarding that behavior." Baskin-Robbins, 825 F.3d at 36 (internal quotation marks and brackets omitted). This requirement ensures that a defendant will not be subjected to the exercise of jurisdiction based "solely on random, isolated or fortuitous contacts with the forum state." Id. (internal quotation marks omitted).

The two "cornerstones" of purposeful availment are voluntariness and foreseeability. PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 19-20 (1st Cir. 2019). Voluntariness requires that the defendant's contacts with the forum state result from actions of the defendant itself; not from the unilateral actions of the plaintiff. See id. at 20. Foreseeability in this context means that defendant's conduct and connection to the forum state "are such that he should reasonably anticipate being haled into court there." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).

Vu contends that the court must conduct this analysis separately with respect to his contract and tort claims. This divided analysis is typically applied under the "relatedness" prong of the specific jurisdiction test. See Phillips Exeter, 196 F.3d at 288-89 (explaining that "relatedness" inquiry is done on a "claim-by-claim basis"). It may also be applied with

respect to the purposeful availment inquiry when the contacts underlying the plaintiff's contract claims differ from those forming the basis of the tort claims.  See PREP Tours, 913 F.3d at 21 at n.6.

That is not the case here, however.  Though Vu attempts to lay out distinct contacts underlying each category of claims, the primary contacts he relies on regarding all claims are: RSI's website and Facebook page; the parties' communications via telephone and email while Vu was in New Hampshire that comprise both the alleged misrepresentations and negotiations leading to the agreements; a sales order RSI sent to Vu in New Hampshire; RSI's acceptance of multiple payments sent by Vu from New Hampshire; and the length of the parties' relationship (nearly three years) caused by RSI's failure to timely perform.[3]  Where, as here, the contract and tort claims arise from the same activity or occurrence and the court considers the same set of contacts as to both claims, the court may conduct a single purposeful availment analysis for both sets of claims.  See PREP Tours, 913 F.3d at 21 n.6; see also Phillips Exeter, 196 F.3d at 289-92 (analyzing contract and tort claims separately for

---

[3] Vu has not identified which of RSI's contacts with New Hampshire, if any, relate to Vu's conversion claim, which concerns RSI's continued exercise of dominion over the Viper in Texas.  See doc. no. 11 at ¶¶ 68-72.

"relatedness" purposes, but not under purposeful availment inquiry). Because Vu's claims arise primarily from the representations, communications, and correspondence between the parties, the court will address RSI's contacts with New Hampshire under the contracts rubric. See Lucerne Farms v. Baling Techs., Inc., 226 F. Supp. 2d 255, 258-59 (D. Me. 2002) (analyzing both tort and contract claims under contract framework when both sets of claims were based on representations in the parties' contract).

A. Voluntariness

Vu has adduced sufficient facts to show that RSI had some voluntary contact with New Hampshire related to Vu's claims. For example, RSI sent a sales order to Vu in New Hampshire. See Phillips, 530 F.3d at 28. The central question is thus whether RSI's contacts are such that RSI could reasonably anticipate being haled into court here.

B. Foreseeability

For contract claims, the exercise of jurisdiction is foreseeable to a defendant when it "deliberately directed its efforts towards the forum state" or when the defendant "entered into a contractual relationship that envisioned continuing and wide-reaching contacts" in the forum. LP Solutions LLC v.

Duchossois, 907 F.3d 95, 104 (1st Cir. 2018). A defendant's contract with a resident of the forum state does not "automatically" establish purposeful availment. Adams, 601 F.3d at 7. Rather, the court must evaluate the existence of the parties' agreement in the context of the parties' prior negotiations, the contemplated future consequences of the agreement, and the parties' actual course of dealing. Id.

There is no allegation here that any representative of RSI ever visited New Hampshire. Consequently, Vu relies primarily on the remote communications between the parties to support the exercise of jurisdiction. Remote communications directed into and received from the forum state may support a finding of purposeful availment. See PREP Tours, 913 F.3d at 20; Downer, 771 F.3d at 68. But the court must scrutinize the number, quality, and duration of those contacts. See PREP Tours, 913 F.3d at 20; Downer, 771 F.3d at 68. Two cases are instructive to this analysis: Downer, in which the First Circuit held that the defendant's contacts with the forum state supported the exercise of jurisdiction over it, and Copia, in which the First Circuit reached the opposite conclusion.

i. Downer

In Downer, the foreign defendant solicited the in-forum plaintiff to sell defendant's company. Downer, 771 F.3d at 63. The parties engaged in a contractual relationship in which the foreign defendant expected the in-forum plaintiff to undertake extensive activities on its behalf. Id. at 67. In performing its contractual obligations, the plaintiff actually undertook various in-forum efforts to find a buyer over a four-year period. Id. During that time period, the parties "collaborated intensively," "communicated regularly" by email and telephone, and defendant sent three payments to plaintiff in the forum. Id. at 64, 67. The First Circuit concluded that, under these circumstances, the court's exercise of specific jurisdiction over the foreign defendant was proper. Id. at 71.

The First Circuit has characterized Downer as "hinging on" three factors: "the defendant's in-forum solicitation of the plaintiff's services, the defendant's anticipation of the plaintiff's in-forum services, and the plaintiff's actual performance of extensive in-forum services." Copia, 812 F.3d at 6; see also PREP Tours, 913 F.3d at 20; Cossart v. United Excel Corp., 804 F.3d 13, 21 (1st Cir. 2015). None of these factors is present here; quite the opposite.

First, there is no evidence that RSI solicited Vu directly or that RSI targeted New Hampshire specifically through its website, Facebook page, or otherwise.  RSI's Facebook page describes RSI as the "world's leading Dodge Viper modification shop."  Doc. no. 19-4 at 4.  This statement indicates RSI's intent to direct its services worldwide.  There is no evidence in the record, however, that RSI's website facilitates RSI's interactive contact with consumers across the globe, or in New Hampshire.  A website that offers no "interactive" features "function[s] more like a digital billboard, passively advertising the business and offering an email address, fax and phone number."  A Corp v. All Am. Plumbing, Inc., 812 F.3d 54, 60-61 (1st Cir. 2016).

A screenshot of RSI's website shows that the website's banner includes a tab entitled "Online Store."  Doc. no. 12-4.  This would seem to indicate that the website includes interactive features; however, Vu has not submitted evidence or allegations to that effect.  Without additional evidence, it is not clear whether consumers can actually complete a transaction using the website or must contact RSI directly through the website.  See Cossaboon, 600 F.3d at 35 (explaining that "something more" than mere existence of website is needed to support jurisdiction, such as "interactive features which allow

the successful online ordering of the defendant's products"
(internal quotation marks and brackets omitted)); cf. Plixer
Int'l, Inc. v. Scrutinizer GmbH, 293 F. Supp. 3d 232, 242 (D.
Me. 2017), aff'd, 905 F.3d 1 (1st Cir. 2018) (finding foreign
defendant purposefully availed itself of Maine laws by selling
cloud-based services through a "highly interactive website,"
interacting with Maine residents through its website, and making
it clear on website that defendant accepted business from all
over the world).  There is no evidence here that, in addition to
the existence of its website, RSI sent marketing materials to
New Hampshire residents or otherwise targeted the New Hampshire
economy.  Cf. Auburn Mfg., Inc. v. Steiner Indus., 493 F. Supp.
2d 123, 130 (D. Me. 2007) (finding purposeful availment met for
false advertising claim when defendant maintained website and
deliberately sent catalogs to forum-state residents).

        Rather, the undisputed evidence here supports the
conclusion that Vu solicited RSI, not the other way around.  Vu
contacted RSI via email and then physically visited RSI's shop
in Texas to inquire about RSI's services.  Though Vu may have
found RSI's contact information on its website, he did not
contact RSI through the website, but via his personal email
address.  Doc. no. 14-3.  Vu's solicitation of RSI's services in
Texas does not support a finding that RSI purposefully availed

itself of the laws of New Hampshire.  See LP Solutions, 907 F.3d at 104 (finding purposeful availment requirement not met when in-forum plaintiff initiated contact with out-of-forum defendant); Copia, 812 F.3d at 2, 6 (same); Phillips, 530 F.3d at 29 (same).

Moving to the next Downer factor (i.e., defendant's anticipation of plaintiff's in-forum services), RSI had no expectation that Vu would perform in-forum services for it.  See Copia, 812 F.3d at 6.  Again, the opposite is true.  The parties agreed that RSI would make certain improvements to the Viper at its facility in Texas in exchange for payment from Vu.  This agreement evinces an intent that performance of the parties' agreement would occur in Texas, not New Hampshire.  See id. at 5-6.  Further, the nature of the parties' contemplated relationship does not demonstrate RSI's intent to engage in continuous and wide-reaching contacts with New Hampshire.  Cf. Lucerne Farms, 226 F. Supp. 2d at 260 (parties' contract for sale of bailing machine contemplated continuing relationship when defendant promised to provide two days of on-site start-up assistance in the forum state and a thirty-day parts warranty).

The final Downer factor (i.e., plaintiff's performance of in-forum services) is also lacking here.  The parties never intended Vu to perform services in New Hampshire for RSI, and he

never did so.  The opposite was expected: RSI's completion of upgrades on the Viper in Texas.  RSI's performance of these agreements——or lack thereof——occurred in Texas, not New Hampshire.  See Phillips Exeter, 196 F.3d at 291 ("[A] contract is arguably breached where a promisor fails to perform . . . .").

Another fact important in Downer that is absent here is evidence of the frequency of the parties' contact while Vu was in New Hampshire.  See Downer, 771 F.3d at 64, 67 (relying on evidence of defendant's eleven email exchanges with plaintiff's in-forum staff, email exchange of one memorandum multiple times for editing, and plaintiff's in-forum hosting of a conference call with defendant and potential buyer).  Vu's objection states that the parties had "repeated back and forth negotiations" over the course of a year while he was in New Hampshire, yet the evidence he submitted does not support this assertion.  See Foster-Miller, 46 F.3d at 145 (plaintiff may not rest on pleadings but must "adduce evidence of specific facts").

The record contains three exhibits evidencing the parties' correspondence: a November 2015 sales order mailed to Vu in New Hampshire; a January 2016 email chain regarding upgrades to the vehicle; and a November 2016 email chain offering additional upgrades.  Doc. nos. 15-5, 15-7, 19-3.  Vu has adduced no other

evidence of the frequency of the parties' correspondence.[4]  Based on this evidence, the parties' communications appear neither regular nor continuous.  See LP Solutions, 907 F.3d at 106-07 (finding exercise of jurisdiction not foreseeable when parties' communications were "sporadic").

Additionally, of these three exhibits, only the 2015 sales order demonstrates RSI's contact with New Hampshire.  The email correspondence itself offers no evidence that those communications, including any alleged misrepresentations, took place while Vu was in New Hampshire.  Vu's own affidavit states that the "majority of [his] communications, negotiations, and agreements with RSI took place . . . while [he] was located in New Hampshire or Vietnam."  Doc. no. 19-2 (emphasis added).  This statement, even construed in Vu's favor, does not provide any evidence of the frequency of the parties' contact while Vu was in New Hampshire.  See Adams, 601 F.3d at 7-8 (finding no purposeful availment in part because there was no evidence that the one phone call between the parties occurred while plaintiff was in forum state).

---

[4] At the hearing, Vu's counsel represented that RSI sent numerous other sales orders to Vu in New Hampshire.  Such sales orders, however, are not part of the record before the court.  See Foster-Miller, 46 F.3d at 145 (plaintiff may not rest on pleadings but must "adduce evidence of specific facts").

To the contrary, the evidence demonstrates that Vu split his time between New Hampshire and Vietnam. And the fact that Vu informed RSI of mailing addresses in California and Texas indicates that Vu may well have spent time in other locations outside of New Hampshire. RSI's infrequent contact with Vu while he may or may not have been in New Hampshire fails to establish that it was foreseeable that RSI could be haled into court here. Cf. Trade Wings, LLC, v. Technetics, Inc., Civ. 02-169-B, 2002 WL 31268389, at *4 (D.N.H. Oct. 10, 2002) (finding purposeful availment requirement met where defendant directed "numerous" communications to plaintiff's offices in New Hampshire, shipped products to New Hampshire office, and sent fourteen purchase orders to that office). Thus, this case is a far cry from the contacts in Downer that established purposeful availment.

ii. Copia

While this case is unlike Downer, the facts are similar to Copia—a case in which the First Circuit "easily affirm[ed]" a dismissal for lack of personal jurisdiction. Copia, 812 F.3d at 2. In Copia, the plaintiff was a Massachusetts company that provided internet services to hotels in Jamaica and the defendants were a Jamaican resort operator and its Pennsylvania-

based alter ego.  Id.  The plaintiff sent defendants an offer to provide internet services to two planned resorts in Jamaica. Id.  After several months of negotiations, which occurred both in Jamaica and through remote communications directed to and received from Massachusetts, the parties reached an agreement. Id. at 3.  Under the contract, the plaintiff agreed to install internet services at the two resorts in Jamaica and provide ongoing on-site support and maintenance.  Id.  During performance of the contract, the plaintiff shipped equipment to Jamaica from Massachusetts that was then installed and maintained entirely in Jamaica.  Id.  The parties also continued to communicate remotely, with the plaintiff receiving some contract-related remote communications in Massachusetts.  Id. Almost five years into the parties' contractual relationship, the defendants informed the plaintiffs that they did not intend to renew the contract terms.  Id. at 3.  The plaintiff then brought suit in Massachusetts.

On appeal, the First Circuit affirmed the district court's dismissal for lack of personal jurisdiction, focusing its analysis on the purposeful availment inquiry.  Id. at 2, 5-6. The First Circuit reasoned that none of the Downer factors was present, demonstrating a lack of purposeful availment.  Id. at 6.  It further explained that the fact that defendants received

equipment shipped from Massachusetts and payments from Massachusetts was not a "voluntary contact" with the forum state, but a result of the plaintiff's unilateral activity. Id. at 5.

The facts here closely resemble those in Copia. Here, as in Copia, plaintiff solicited defendant in its home jurisdiction. Likewise, Vu visited RSI's out-of-forum location, but no representative of RSI ever visited the forum state. The parties' agreements in both cases were the result of remote communications, via email and telephone, sent to and from the forum. In both cases, the parties' agreements contemplated that performance would occur in defendant's home jurisdiction and that is where it actually occurred. Based on these similarities, the court is inclined to reach the same result here as the First Circuit did in Copia. See also Hannah Int'l Foods, Inc. v. House of Thaller, Inc., No. 18-cv-52-AJ, 2018 WL 3827626, at *4-5 (D.N.H. Aug. 10, 2018) (concluding that plaintiff had not met burden of demonstrating purposeful availment when plaintiff solicited defendant, defendant never visited forum state, parties remotely negotiated contract, contract contemplated performance in defendant's jurisdiction, and performance occurred outside of forum).

Vu's other asserted contacts between RSI and New Hampshire do not persuade the court otherwise.  Like the plaintiff in Copia, Vu argues the fact that he sent payments to RSI from the forum state supports a finding of purposeful availment.  But, as the Court explained in Copia, the fact that the payments originated in New Hampshire is a result of Vu's "unilateral activity."  Copia, 812 F.3d at 5.  There is no evidence that the parties' agreements required Vu to send his payments from New Hampshire.  See id.  Instead, the money traveled to RSI from the forum state only by virtue of Vu's unilateral decision to reside here part-time.  See Phillips, 530 F.3d at 28 ("Jurisdiction cannot be created by and does not travel with the plaintiff . . . wherever she goes." (internal quotation marks omitted)).

The same can be said of the fact that RSI mailed at least one sales order to New Hampshire.  The fact that the sales order traveled to New Hampshire was a result of Vu's unilateral choice to reside here part-time, not due to RSI's targeted efforts towards this forum.  See Copia, 812 F.3d at 5 (finding that fact that defendant sent notice of nonrenewal to plaintiff's registered office in Massachusetts did not support finding of purposeful availment).

Vu also points to the length of the parties' relationship to support jurisdiction.  Vu describes the relationship as

lasting for three years due in large part to RSI's efforts to sell Vu additional upgrades and its failure to timely perform. While RSI has certainly retained Vu's Viper for over three years, the record does not demonstrate that the parties maintained contact throughout that whole time period. Even crediting Vu's assertion as to the length of the parties' relationship, the court does not find that it tips the analysis one way or the other given the other facts discussed above. Compare Downer, 771 F.3d at 67-68 (finding purposeful availment when parties had four-year relationship during which plaintiff performed in-forum services for defendant), with Copia, 812 F.3d at 3, 5-6 (finding no purposeful availment when parties' four-year contractual relationship involved plaintiff's performance of services for defendant in non-forum location).

### C. Summary

Considering all the facts discussed above together, RSI's contacts with New Hampshire consist of a passive website accessible in the forum, an unknown amount of remote communication between RSI and Vu while he was in New Hampshire, the sales order mailed to New Hampshire, and the money Vu wired to RSI from New Hampshire. These contacts are not of sufficient quantity and quality that RSI could foresee being haled into

court here.  See Phillips, 530 F.3d at 28-29 (finding purposeful availment requirement not met when defendant's only contact with forum state was mailing employment contract to plaintiff and sending three follow-up emails); Labollita v. Home Rental Connections Ltd., No. CV 16-11433-LTS, 2017 WL 2569522, at *5-6 (D. Mass. June 13, 2017) (no purposeful availment when plaintiff submitted inquiry through defendant's website about vacation rental, parties communicated and entered contract remotely to rent apartment for short duration, and all performance was expected to occur outside of forum state).

The court finds that Vu has not met his burden of demonstrating that RSI purposefully availed itself of suit in this forum by deliberately targeting its behavior towards New Hampshire such that this forum "should have the power to subject [RSI] to judgment regarding that behavior." Baskin-Robbins, 825 F.3d at 36 (internal quotation marks omitted).  Because Vu has failed to satisfy one of the three elements necessary to establish specific jurisdiction, the court need not reach the other two elements.  See Copia, 812 F.3d at 4-5.  This court cannot exercise personal jurisdiction over RSI.  Given this conclusion, the court need not address RSI's alternative argument supporting dismissal (that the suit be dismissed for forum non conveniens).

II. <u>Motion to Transfer Venue</u>

As an alternative to its motion to dismiss, RSI requests that this court transfer this action to the United States District Court for either the Eastern or Northern District of Texas pursuant to 28 U.S.C. § 1404(a). Because this court lacks personal jurisdiction over RSI, transfer under § 1404 is "clearly inappropriate." Albion v. YMCA Camp Letts, 171 F.3d 1, 2 (1st Cir. 1999). The court therefore must deny RSI's motion to transfer venue pursuant to 28 U.S.C. § 1404(a).

A court that lacks personal jurisdiction over a suit may, however, transfer the action under 28 U.S.C. § 1631. Fed. Home Loan Bank of Bos. v. Moody's Corp., 821 F.3d 102, 114-19 (1st Cir. 2016), abrogated on other grounds by Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553 (2017). That statute provides that:

> [w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other court . . . in which the action . . . could have been brought at the time it was filed . . . .

28 U.S.C. § 1631.

This statute establishes a "rebuttable presumption in favor of transfer" that is overcome only if the "inquiring court determines that transfer is not in the interest of justice." Fed. Home Loan, 821 F.3d at 119 (internal quotation marks

24

omitted).  In assessing whether transfer is in the interest of justice, the court should consider the "totality of the circumstances," including the relative merits of the suit and whether transfer would unfairly benefit the proponent, impose an unwarranted hardship on an objector, or unduly burden the judicial system.  Britell v. United States, 318 F.3d 70, 74-75 (1st Cir. 2003).

At the time it was filed, this suit could have been brought in the United States District Court for the Eastern District of Texas.  The parties agree that there is complete diversity between them and that the amount in dispute is greater than $75,000.  Thus, the court would have diversity jurisdiction over this action.  See 28 U.S.C § 1332.  RSI would plainly be subject to personal jurisdiction in the Eastern District of Texas, as it is incorporated in Texas and has its principal place of business there.  See Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (corporation subject to general personal jurisdiction in place of incorporation and principal place of business).  Finally, venue is proper in the Eastern District of Texas as RSI's principal and sole place of business is in Plano, Texas, which is in the Eastern District of Texas.  See 28 U.S.C. § 1391(b).

The court sees no facts in the record that would overcome § 1631's presumption in favor of transfer.  There is no indication

in the record that transfer would unfairly benefit RSI (as outright dismissal would), impose unwarranted hardship on Vu, or unduly burden the judicial system. And Vu's claims appear to be far from frivolous. A transfer to the Eastern District of Texas is in the interest of justice as it will give Vu a chance to have his claims resolved on their merits. See Britell, 318 F.3d at 74. The court will therefore transfer this suit to the Eastern District of Texas pursuant to its authority under 28 U.S.C. § 1631.[5]

**CONCLUSION**

For the foregoing reasons, the court lacks personal jurisdiction over RSI and cannot hear this matter. The court therefore grants RSI's motion to dismiss for lack of personal jurisdiction (doc. no. 14). Because the court lacks jurisdiction, it must deny RSI's motion to transfer venue under

---

[5] In favor of its motion to transfer venue, RSI argues that the written contract between the parties contains a forum-selection clause by which Vu agreed to bring suit only in Texas. Vu argues that this forum-selection clause is not applicable because his claims in this suit are not premised on the parties' written contract for purchase of the Viper, but, instead, grow out of their subsequent oral agreements regarding upgrades to the Viper. The court need not resolve the parties' dispute. Their disagreement about the applicability of the forum-selection clause does not impact the court's decision to transfer under 28 U.S.C. § 1631. See Diving Services, Inc. v. BTM Machinery, Inc., C.A. No. 16-112 S, 2017 WL 25463, at *4 n.3 (D.R.I. Jan. 3, 2017) (treating forum-selection dispute in same way in context of transfer under 28 U.S.C. § 1631).

28 U.S.C. § 1404 (doc. no. 15).  Instead of dismissing the case outright, however, the court will transfer this case to another forum with such jurisdiction pursuant to its authority under 28 U.S.C. § 1631.  The court directs the Clerk's Office to transfer this case to the United States District Court for the Eastern District of Texas.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

October 16, 2019

cc:  Counsel of Record